Wellington v. Murdough.

JOHN WELLINGTON *versus* HATCH MURDOUGH.

A. purchased two lots of land, by one of two plans which represented them differently, and then sold one of the lots to B. by the other plan ; *Held*, that the latter plan must govern in ascertaining B's rights.

Evidence with reference to the plan by which a purchase is made, in conflict with the language of the deed itself, is not admissible.

The subsequent acts and declarations of parties to a deed, are not sufficient to destroy or vary their legal rights, as exhibited in the deed.

ON REPORT from *Nisi Prius*, MAY, J., presiding.

This was a WRIT OF ENTRY, for possession of a parcel of land in Albion, "being a piece off of the easterly end of the south half of the lot numbered 21, on a plan of the Nelson tract, made by Joseph Chandler," &c.

The general issue was pleaded by the tenant.

The case was taken from the jury, and the parties agreed, that the presiding Judge should report the evidence for the decision of the full Court, and that the Court should render such judgment as the evidence, or so much as was legally admissible should warrant, the Court drawing such inferences as a jury might.

The facts are sufficiently stated in the opinion of the Court.

*Williams* and *Cutler*, for defendant, argued in writing.

I. Plaintiff claims the demanded premises as part of lot No. 21, to which he makes title through mesne conveyances, from T. L. Winthrop, who sold it to Joel Wellington, June

29, 1822. Whatever extent that lot had for Joel Wellington it has for plaintiff and no more.

What extent, then, had lot No. 21 by Winthrop's deed to Joel Wellington? It begins with using general terms,—"lot No. 21, (and other Nos.,) on Chandler's plan,"—and then proceeds to limit and define the land conveyed by special metes and bounds. The scrivener, (R. Williams,) testifies that the "Chandler plan" he used in drawing the deed in question, was the draft of it made by Hayden, and that is the plan really referred to in the deed. Hayden's delineation of it, as his certificate on it expressly says, gives a view of the Nelson tract as surveyed by Joseph Chandler in 1806. The deed does not say Chandler's plan of 1806, but "Chandler's plan," and it was in fact made from the view of it given by Hayden's delineation.

In *Emerson* v. *Tarbox*, 7 Greenl. 61, the Court say, "Adams' plan," (a later one,) is "Hobart's plan" (of earlier date.) So here, the Hayden draft of 1822, purports to be, and is in fact, the "Chandler plan," so far as reference to a plan in the deed is concerned.

If this view be correct, it settles the case at once for defendant.

II. If required to go further, defendant next has resort to the specific boundaries, as controlling and limiting the general language, "lot No. 21, on Chandler's plan." If the monuments and distances in the deed differ from the plan referred to in it, the former must control. *Haynes* v. *Young*, 36 Maine, 557; *Esmond* v. *Tarbox*, above cited; *Allen* v. *Littlefield*, 7 Greenl. 220; *Herrick* v. *Hopkins*, 23 Maine, 219. In the last case, the Court (TENNEY, J.,) say, "if there be a precise and perfect description, showing that the parties actually located the land upon the earth, and another, which is general in its terms, and they cannot be reconciled with each other, the latter may yield to the former."

The specific description in the deed says, "beginning at the N. W. corner of No. 21," (a fixed point not in dispute,) and

by both plans the east and west lines of lots Nos. 21, 22 and 23, are straight and parallel. The deed goes on and gives the distance from the S. W. corner of No. 22, to the S. E. corner of said lot No. 22, to be exactly 160 rods.

The case finds, that Hayden, acting just before the deed was drawn and at the request of the parties to it, set up a monument which is now standing at the N. E. corner of No. 23, and both plans show that the N. E. corner of No. 23 is identical with the S. E. corner of No. 22. The call of the deed, therefore, for the S. E. corner of lot No. 22, is this very monument. This fixes the extent eastwardly of lot No. 22, by the deed, and both plans show lots Nos. 22 and 21 to be of equal length, viz., 160 rods.

Again, the deed gives particularly the exact length of lot No. 29, calling for both its north line and its south line as exactly 200 rods; and by both plans the north line of No. 29 and the south line of No. 30 are of the same length, viz., 200 rods, extending from Chandler's range line, at east end of 3d range, (a fixed point, not disputed,) to the monument set up by Hayden at N. E. corner of No 23, or S. W. corner of No. 29.

Again, the deed of Joel Wellington to John French in 1826, in which he conveys part of No. 22, shows he bought of Winthrop with reference to Hayden's monuments and plan of 1822, and that the N. E. corner of No. 22 is where defendant contends it is. It is an admission, by which plaintiff, claiming under him, is bound. And by both plans that corner and S. E. corner of No. 21 are contiguous and identical.

III. In redeeming from Winthrop's mortgage, the parties interested paid in proportion to their number of acres. R. Williams testifies, that plaintiff and he reckoned No. 21 as only 100 acres, and plaintiff paid on it as having that extent and no more.

And Libbey, who represented himself as acting for plaintiff, "looking at all the papers," had full knowledge that plaintiff paid on only 100 acres, and that defendant had paid money to redeem the land now sued for and made no objection.

The only inference is, that plaintiff then claimed No. 21 to be only 100 acres; shall he now, after defendant has, with his knowledge and consent, paid the value of the land in dispute, turn round and claim the land, and defraud the defendant of the money so paid?

*A. Libby*, for plaintiff, argued in writing.

Demandant claims demanded premises as the easterly part of lot No. 21, according to Chandler's plan of the Nelson tract.

Tenant claims the same premises as the westerly part of lot 30, on same plan.

Both parties claim under Joel Wellington through mesne conveyances, and it is admitted that said Joel Wellington owned both of said lots, subject to a mortgage to T. L. Winthrop. He conveyed lot 21, on said Chandler's plan, to demandant's grantor, and subsequently conveyed the excess on lot 30, on said plan, west of the east 100 acres, to tenant's grantor.

Both parties have redeemed their lands from the Winthrop mortgage according to Chandler's plan, as will appear by the deeds of release in the case.

The case finds, that between the easterly boundaries of lot 30, and the west boundaries of 21, there are 224 acres, and that there never was any divisional line or monuments between said lots; each lot is represented on said plan as containing 100 acres. And the plan is referred to in the deeds, and becomes a part thereof. The 24 acres overplus in the two lots must be divided equally between them. *Brown* v. *Gray*, 3 Greenl. 126; *Thomas* v. *Patten*, 13 Maine, 329. Hayden's plan of his re-survey is inadmissible to explain or control the deeds of either party. It is not referred to in the deeds.

And so is the evidence of Williams. There is no ambiguity or uncertainty in the deeds. They cannot be explained or controled by parol.

The deed from Winthrop's executors, dated May 3, 1855,

is inadmissible. It is given subsequent to the commencement of this suit.

The plea is the general issue. Demandant, having shown title, must prevail, unless tenant shows a better title in himself at the commencement of the suit. R. S., c. 145, § 11.

CUTTING, J.—The demandant claims the premises in controversy by deed from Nahum French to himself of Sept. 7, 1832, conveying "part of the Nelson tract, (so called,) and being divisional lot numbered 21, agreeably to Joseph Chandler's plan of said tract, containing one hundred acres more or less."

"It is admitted by the parties, that there are in said lots No. 21 and 30, east of it, about 224 acres, said lots together being 360 rods long, instead of 320, as delineated on said plan; and that there never was any line run or marked by said Chandler between said lots, nor any monuments or corners put up by him between said lots to mark the extent of No. 21 easterly, or of No. 30 westerly; said Chandler having made corners on the west end of No. 21, and east end of No. 30."

Chandler's plan represents the divisional line between lots 21 and 30 to be equi-distant from the range lines, thereby dividing the surplus of 40 rods equally between the two lots, and consequently represents the "*locus in quo*" to be within lot No. 21, and embraced in the demandant's deed.

But the demandant traces his title through mesne conveyances, from Thomas L. Winthrop, who, by deed of June 29, 1822, conveyed to Joel Wellington "part of the Nelson tract, (so called,) being lots numbered 21, 22, 28, 30, and parts of lots Nos. 27, 33 and 34, on Chandler's plan of said tract," and in the deed described the land conveyed specifically by metes and bounds. And it is contended by the counsel for the tenant, that it is to be inferred from such definite description, that lot No. 21 is only 160 rods, while the lot No. 30 is 200 rods in extent; and that the plan used by the conveyancer on that occasion, and referred to as Chandler's plan,

was Hayden's delineation of it, and introduces testimony, which, if admissible, would seem to establish that fact. *In arguendo*, we will admit the evidence. If the deed had omitted the more specific description, it might have been void for uncertainty, as to the parts of the lots, so that in order to ascertain what was conveyed, it was necessary to trace, as was done, the exterior boundaries of the tract, which boundaries correspond in every essential particular with Hayden's plan.

This brings us to the consideration of the Chandler and Hayden plans. *The latter is said in argument to be only a delineation of the former.* Whether it be so or not, can be determined only by inspection. By such test, it will be found that they present nothing in common, except the numbers of the lots, the range and side lines; the other lines and representations are either additional or wholly variant.

The plan by Hayden purports to give only " a view " of the lots in controversy, and " a view of a re-survey " of certain other lots " to accommodate the settlers thereon." To view, does not signify to change or reform, much less to obliterate, while a re-survey may denote the subject matter for a new plan. Consequently the Chandler plan has never lost its identity, and as an original must still be recognized as when first certified to the public in 1806.

On March 15, 1828, Joel Wellington conveyed to Nahum French, the demandant's grantor, by the same description as that contained in the demandant's deed. At that time Wellington was the owner of lots Nos. 21 and 30, " on Chandler's plan," and he deeded the former lot *agreeably to that plan*, which lot, by that plan, contains one half the space between the range lines, *to wit*, a lot 180 by 100 rods. Wellington then held the lots represented on two plans, the Chandler plan and the Hayden plan, or Hayden's " view," or " a view of a re-survey." If he purchased by the one, it by no means follows, that he could not sell by the other, and although there has been evidence with reference to the plan by which he purchased, none has been offered as to that by which he sold, and

if offered must have been excluded as being in conflict with the language of the deed. In 1825, some three years before his conveyance of this lot, he sold to John French the easterly end of lots 22 and 23, "as re-measured and marked by Charles Hayden" in 1822; then why not, if he would restrict the demandant's grantor to the re-survey, make use of the same or similar language?

The subsequent acts and declarations of the parties, as the Court say in *Chandler* v. *McCord*, 38 Maine, 564, are not sufficient to destroy or vary their legal rights as exhibited by the deed. According to the agreement of the parties the defendant is to be defaulted.

TENNEY, C. J., and RICE, APPLETON, and MAY, J. J., concurred.